**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

CHRISTINE JIMENEZ,

                    Plaintiff,

v.

BANK OF AMERICA, N.A.,

                    Defendant.

Civil Action No. 3:21-cv-572

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Christine Jimenez, by counsel, and files this Class Action Complaint against Bank of America, N.A. ("BANA"). Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. The Commonwealth of Virginia and its local governments exempt several categories of vulnerable individuals from paying state and local real estate taxes, including: the elderly, Va. Code § 58.1-3210; the disabled, Va. Code § 58.1-3210; disabled veterans, Va. Code § 58.1-3219.5; and the surviving spouses of veterans, law-enforcement personnel, firefighters, search and rescue personnel, or emergency medical services personnel who were killed in the line of duty, Va. Code §§ 58.1-3219.9; 58.1-3219.14.

2. Plaintiff, like all putative class members, is exempt from paying real estate taxes. Due to a disability, she has no responsibility for paying real estate taxes in Chesterfield County nor has she for several years.

3. Like most homeowners in Virginia, however, Plaintiff's mortgage servicer requires her to pay estimated homeowner's insurance and real estate taxes into an escrow account.

4.      Under the terms of most mortgages, consumers are not able to pay their own insurance and taxes, nor are they able to choose the entity that maintains their escrow accounts— their mortgage servicers.

5.      In order to keep her monthly mortgage payments affordable and to prevent BANA from improperly including charges in her monthly payments for a real estate tax that she does not owe, Plaintiff provides BANA with proof of her tax exemption from Chesterfield County every year.

6.      Despite Plaintiff's efforts, BANA insisted that Plaintiff pay an extra $284.71 per month towards her mortgage to cover the real estate taxes that it asserted she owed to Chesterfield County.

7.      BANA's repetitive conduct is representative of standardized procedures that it has applied to all putative class members.

8.      When Plaintiff was unable to pay this amount due to her limited income and instead only paid what was actually due under her loan, BANA refused to apply her payments to her account, considered her loan in default, and charged her late fees and other default-related charges, all of which stemmed from its improper application of assessed real estate taxes to her escrow account.

9.      BANA's conduct towards Plaintiff and putative class members constitutes a violation of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1639(f), and breached the fiduciary duty that BANA owed to Plaintiff and the putative class members. BANA also acted negligently, resulting in BANA being unjustly enriched. Plaintiff alleges each of these claims on a class basis because BANA's conduct towards Plaintiff appears to be the result of its standardized procedures regarding its handling of escrow accounts.

10.     In addition, as a result of BANA's improper accounting of Plaintiff's escrow account, BANA also reported inaccurate information about her loan to the credit bureaus. After Plaintiff submitted disputes to the credit bureaus regarding BANA's inaccurate reporting, BANA failed to investigate Plaintiff's disputes and correct the inaccurate information.

11.     BANA also continued to report negative information about Plaintiff's mortgage to the credit bureau after Plaintiff sent BANA a Qualified Written Request.

12.     Therefore, Plaintiff also alleges individuals claims against BANA under: (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), for its failure to fully and properly investigate her disputes, to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, and to appropriately mark her account as disputed; and (2) the Real Estate Settlement Procedures Act,   12 U.S.C. § 2605(e)(3), for continuing to provide derogatory information regarding the overdue payments during the 60-day period after BANA received Plaintiff's Qualified Written Request.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1681(p). It also has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367. The court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the amount in controversy exceeds $5,000,000 and the diversity requirements of that section are met.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the acts and transactions that form the basis of this Complaint occurred here.

## PARTIES

15.     Plaintiff Christine Jimenez is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

16.     BANA is a national association that acted as her mortgage servicing company with a principal place of business in Charlotte, North Carolina. At all times relevant to this Complaint, BANA was a mortgage loan servicing company governed by RESPA and a furnisher governed by the FCRA.

## FACTS

### *BANA's Mortgage Servicing Business*

17.     BANA is one of the largest mortgage servicers in the United States of America.

18.     As is customary in the mortgage lending, a borrower, like Plaintiff, has no say in who services her mortgage loan.

19.     As a mortgage servicer, BANA manages the day-to-day aspects of consumers' mortgage loans, including collecting and applying monthly payments, maintaining escrow accounts, communicating with borrowers about their loans, reporting payment information to various credit bureaus, and managing the foreclosure process when a consumer becomes delinquent.

20.     Pertinent to this litigation, BANA manages escrow accounts for the mortgages that it services. A mortgage escrow account is "a trust account set up in a borrower's name to ensure the timely payment of specified obligations affiliated with a property." H.R. Rep. No. 111-94, at 53 (2009).

21.     Under escrow agreements, which are often required by borrowers' deeds of trust, borrowers pre pay a set amount into their escrow accounts on a regular, typically monthly, basis. *Id.* Lenders "then use these collected sums to guarantee the timely payment of property tax bills

and insurance premiums." *Id.* By guaranteeing timely payment, lenders protect themselves and the borrowers from tax liens and property damage risk. *Id.* When the mortgage contract ends, any money remaining in escrow is returned to the borrower.

22. BANA receives significant servicing income from interest earned on borrowers' tax and insurance payments, which are held in an escrow account between the time the payments are collected and the time they are paid out to the appropriate insurance or taxing authority. A substantial part of BANA's servicing revenue, therefore, is dependent on escrow disbursement timing, escrow analysis, and escrow cushion requirements. Adam J. Levitin & Tara Twomey, *Mortgage Servicing*, Georgetown Law and Economics Research Paper No. 11-01 (Dec. 15, 2010) at 39 (available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1324023).

23. This float income can be very profitable. For example, Countrywide Mortgage, which BANA later acquired, reported holding $19.2 billion in borrower and investor custodial cash accounts at the end of December 2007, which produced significant float income via interest earned on those accounts. *Id.* at 40 (citing Countrywide Fin. Corp., Annual Report (Form 10-K) F-99 (Feb. 29, 2008), available at http://www.secinfo.com/dVut2.t21n.htm.)

24. BANA also makes servicing income from assessing and collecting late fees, foreclosure fees, and other default-related fees to borrowers' accounts. *Id.* at 41. Under most

servicing agreements, BANA is allowed to keep all of these fees for itself and does not have to pay them to the owner of the mortgage. *Id.* at 41.

25.     These fees are likewise highly profitable for mortgage servicers. Countrywide collected almost ten percent—or approximately two hundred and eighty-seven million—of its $2.876 billion servicing revenue from late fees alone in 2006. *Id.* at 42.

26.     BANA is, therefore, financially motivated to require consumers to maintain as large an escrow balance as possible, and to aggressively enforce the balance of escrow accounts through late fees and other default-related charges.

27.     This financial motivation has resulted in BANA mismanaging escrow accounts for years.

28.     For example, according to the Consumer Financial Protection Bureau, BANA was the second most complained-about mortgage servicer in January 2017, including complaints for escrow shortages and other escrow mismanagement. CFPB, January 2017 Monthly Complaint Report, Vol. 19, p. 14, 18 (available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-monthly-snapshot-spotlights-mortgage-complaints/).

29.     A cursory search of the CFPB's consumer complaint database shows more than 200 complaints made against BANA for escrow issues. https://www.consumerfinance.gov/data-research/consumer-complaints/

30.     As detailed below, Plaintiff and the putative class members are also victims of BANA's aggressive and improper escrow accounting policies.

### *BANA Charges Plaintiff for Taxes that She Does Not Owe*

31.     Plaintiff's mother passed away in 2005, at which time Plaintiff inherited her mother's home in Chesterfield County, Virginia and assumed her mother's mortgage.

32.     Plaintiff refinanced the home in August 2014. As long as Plaintiff has lived there, she has used the home as her primary residence.

33.     Plaintiff's loan on the property is a federally-related mortgage.

34.     From the time Plaintiff refinanced the mortgage in August 2014, she has fully and timely made her mortgage payment each month.

35.     Plaintiff is disabled and exempt from paying real estate taxes in Chesterfield County.

36.     Plaintiff has held this tax-exempt status since before she obtained the refinance in August 2014.

37.     Plaintiff has provided BANA with proof of her tax-exempt status each year.

38.     Despite this, in 2017 and 2018, BANA improperly applied her mortgage payments toward property taxes that she did not owe, which resulted in significant default-related fees and inaccurate credit reporting.

39.     Plaintiff spent numerous hours contacting BANA to correct its error, which was ultimately resolved.

40.     Despite Plaintiff's efforts and its knowledge of its prior errors, BANA sent Plaintiff an Escrow Account Disclosure Statement in February 2020, which stated that Plaintiff's monthly mortgage payment was going to increase from $539.50 to $853.23 because it projected that she would owe $1,744.50 in county taxes for 2020.

41.     Moreover, BANA made a payment out of Plaintiff's escrow account to Chesterfield County for Plaintiff's estimated property taxes, but Chesterfield returned the money to BANA because Plaintiff owed no taxes.

42.     Despite this refund, BANA did not correct its accounting for Plaintiff's escrow account.

43.     Plaintiff alerted BANA to its error multiple times, including by visiting her local BANA branch in Midlothian, Virginia on at least two occasions in October and December 2020.

44.     During these visits, Plaintiff spoke with a BANA customer service representative, Lena Malone, who told Plaintiff that the error would be corrected and that she should receive a revised escrow statement in 3 to 5 days.

45.     Plaintiff never received a revised escrow statement. Instead, BANA continued to report her mortgage as late to the credit bureaus and assessed additional late fees and other default-related fees such as property inspection fees and corporate advances to her account.

46.     In addition, BANA held Plaintiff's monthly payments in a suspense account and failed to credit them to her balance.

47.     Plaintiff also tried emailing and calling BANA to have the issue corrected.

48.     Despite Plaintiff's attempts, BANA refused to correct the escrow accounting, continued to charge her improper late fees and default-related charges, and reported her as delinquent to the credit bureaus.

49.     Because she could not resolve the issue with BANA, Plaintiff also submitted a dispute through the CFPB consumer complaint portal.

***BANA Violates RESPA By Continuing to Report Plaintiff as Delinquent After Her Qualified Written Request***

50.     In addition to visiting BANA branches and making several telephone calls to attempt to have the escrow error corrected, Plaintiff sent BANA a Qualified Written Request in April 2021.

51.     This Qualified Written Request was sent to the address that BANA designated for these correspondences.

52.     Plaintiff's Qualified Written Request asked BANA to investigate the inaccurate escrow amounts that it was charging her, update her payment history, reverse late fees, detail the corporate advances charged to her account, and update its derogatory credit reporting.

53.     Plaintiff's Qualified Written Request also asked BANA to provide Plaintiff with: all documents to support its contention that she owed county taxes; the reason that her escrow payment increased; documents regarding its prior investigation; copies of any telephone recordings; servicing notes; an explanation of its "misapplication reversals" on her transaction history; and an explanation and supporting invoices for the corporate advance fees that it assessed to her loan.

54.     BANA received Plaintiff's Qualified Written Request on April 26, 2021.

55.     BANA sent Plaintiff a letter dated April 29, 2021 acknowledging receipt of her Qualified Written Request.

56.     Despite receiving Plaintiff's Qualified Written Request, BANA continued to report the disputed payment information to the credit bureaus within 60 days of its receipt of Plaintiff's Qualified Written Request.

57.     For example, BANA told the consumer reporting agencies that the disputed payments should remain on Plaintiff's credit reports in response to Plaintiff's dispute letters.

58.     BANA also provided monthly reporting updates to the consumer reporting agencies regarding Plaintiff's mortgage account and continued to do so while her Qualified Written Request remained pending.

59.     Moreover, after BANA responded to Plaintiff's Qualified Written Request, it continued to charge her corporate advance fees, including a fee of $18.84 on August 14, 2021, despite the fact that Plaintiff remains current on her mortgage.

### *BANA Refuses to Correct Its Inaccurate Reporting in Response to Plaintiff's Disputes*

60.     Plaintiff's BANA account was also reported on her credit reports as past due with a severely derogatory payment history.

61.     Again, this reporting was inaccurate. Plaintiff paid the amount that was due on her mortgage each month and made those payments on time. The error stemmed from BANA erroneously adding improper escrow charges to her account for county taxes.

62.     In early 2021, Plaintiff submitted disputes to the credit bureaus regarding the inaccurate information.

63.     Upon information and belief, the credit bureaus forwarded this information to BANA.

64.     BANA failed to conduct an investigation into the substance of Plaintiff's dispute and instead verified the derogatory payment history and past due balance as correct.

65.     Plaintiff mailed follow-up dispute letters to Equifax, Experian, and Trans Union in April 2021.

66.     This letter explained that the payment history and past-due balance for Plaintiff's BANA mortgage was incorrect and stemmed from the improper escrow charges. To support her dispute, Plaintiff attached copies of her Chesterfield County tax exemption letter for 2020, copies of her BANA monthly statements, BANA's complaint summary from the CFPB website, and copies of a prior dispute.

67.     Again, upon information and belief, the credit bureaus forwarded Plaintiff's dispute to BANA.

68.     Despite Plaintiff's disputes and the supporting information attached to the disputes, BANA refused to remove the inaccurate, derogatory information from Plaintiff's credit reports and instead verified it as accurate.

69.     At all times relevant to this Complaint, BANA's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, BANA's conduct was willful because it was done in accordance with BANA's intended procedures. In addition, BANA prioritizes processing disputes quickly rather than making sure that the disputes are investigated thoroughly and accurately.

70.     As a result of BANA's conduct, Plaintiff suffered actual damages. For example, Plaintiff was unable to take advantage of historically low interest rates to refinance her property because BANA was reporting her mortgage as delinquent. Her credit score was reduced, improper late fees and other improper charges were added to her balance, and Plaintiff feared that her home would be foreclosed on. This caused Plaintiff significant emotional distress.

## COUNT ONE:
### Violation of TILA, 15 U.S.C. § 1639(f) and 12 C.F.R. § 1026.36(c)(1)
### (Class Claim)

71.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

72.     Under Rule 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class (the "TILA Class"):

> All consumers: (1) whose primary residence is located in Virginia and subject to a mortgaged serviced by BANA; (2) who is exempt from paying property taxes under Va. Code § 58.1-3200, *et seq.*; and (3) BANA assessed real estate taxes to their

escrow account and then placed their mortgage payments in a suspense account within the one year predating the filing of this lawsuit.

73.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. BANA is one of the nation's largest mortgage servicers. Upon information and belief, thousands of tax-exempt Virginia consumers were the subject of BANA's improper escrow procedures during the class period. These class members' names and addresses are identifiable through BANA's internal business records and by the records maintained by Virginia localities under Va. Code § 58.1-3604, and they may be notified of this litigation by published or mailed notice.

74.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether BANA's refusal to apply Plaintiff's and the putative class members' monthly payments were proper; (2) whether BANA's conduct violated TILA; and (3) the appropriate amount of statutory damages.

75.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

76.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the class members that she seeks to represent. Plaintiff has retained counsel competent and experienced in class-action litigation, and she intends to continue to prosecute the

action vigorously. Plaintiff and her counsel will fairly and adequately protect the putative class members' interests. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

77.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by BANA's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

78.     On one or more occasions within the past year, BANA violated 15 U.S.C. § 1639(f) and 12 C.F.R. § 1026.36(c)(1) by failing to credit Plaintiff's and the putative class members' mortgage payments on the date that it received them and instead held the mortgage payments in a suspense account.

79.     As a result of BANA's violations of 15 U.S.C. § 1639(f) and 12 C.F.R. § 1026.36(c)(1), Plaintiff and the putative class members suffered concrete and particularized harm, including but not limited to improper fees and charges.

80.     Plaintiff and the putative class members are entitled to recover actual damages, statutory damages, costs, and attorneys' fees from BANA in an amount to be determined pursuant to 15 U.S.C. § 1640.

**COUNT TWO:**
**Unjust Enrichment**
**(Class Claim)**

81.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

82.     Under Rule 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class (the "Unjust Enrichment Class"):

> All consumers: (1) whose primary residence is located in Virginia and subject to a mortgaged serviced by BANA; (2) who is exempt from paying property taxes under Va. Code § 58.1-3200, *et seq.*; (3) BANA assessed real estate taxes to their escrow account and subsequently charged late fees, corporate advances, or any other default-related fees to the account; and (4) who paid any amount toward these fees in the three years predating the filing of this litigation.

83.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. BANA is one of the nation's largest mortgage servicers. Upon information and belief, thousands of tax-exempt Virginia consumers were the subject of BANA's improper escrow procedures during the class period.  These class members' names and addresses are identifiable through BANA's internal business records and by the records maintained by Virginia localities under Va. Code § 58.1-3604, and they may be notified of this litigation by published or mailed notice.

84.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues

include: (1) whether Plaintiff and the putative class members conferred a benefit on BANA; (2) whether BANA knew or should have known of the benefit; (3) whether BANA's retention of the benefit would be unjust; and (4) the proper amount of damages.

85.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

86.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the class members that she seeks to represent. Plaintiff has retained counsel competent and experienced in class-action litigation, and she intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the putative class members' interests. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

87.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by

BANA's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

88.     BANA knew that Plaintiff and the putative class members did not owe real estate taxes.

89.     Despite this, BANA charged Plaintiff's and the putative class members' escrow accounts for taxes. When Plaintiff and the putative class members did not pay BANA's inflated escrow amounts, BANA placed their payments in a suspense account and started assessing improper late fees, corporate advance fees, and other default-related fees to their accounts.

90.     Plaintiff and the putative class members conferred a benefit on BANA when they paid these improper fees.

91.     BANA knew or should have known that these fees were improper and that they should have been reversed and repaid to Plaintiff and the putative class members.

92.     Because these fees are improper, it would be unjust for BANA to retain them.

93.     Therefore, Plaintiff and the putative class members are entitled to recover the amounts they paid towards these improper fees and charges from BANA.

**COUNT THREE:**
**Breach of Fiduciary Duty**
**(Class Claim)**

94.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

95.     Under Rule 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class (the "Breach of Fiduciary Duty Class"):

> All consumers: (1) whose primary residence is located in Virginia and subject to a mortgaged serviced by BANA; (2) who is exempt from paying property taxes under

Va. Code § 58.1-3200, *et seq.*; (3) BANA made a payment from the escrow account to a third party for property taxes in the two years predating the filing of this litigation.

96.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. BANA is one of the nation's largest mortgage servicers. Upon information and belief, thousands of tax-exempt Virginia consumers were the subject of BANA's improper escrow procedures during the class period.  These class members' names and addresses are identifiable through BANA's internal business records and by the records maintained by Virginia localities under Va. Code § 58.1-3604, and they may be notified of this litigation by published or mailed notice.

97.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether BANA owed a fiduciary duty to Plaintiff and the putative class members; (2) whether BANA breached its fiduciary duty by mismanaging Plaintiff's and the putative class members' escrow accounts; and (4) the proper amount of damages.

98.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

99.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the class members that she seeks to represent. Plaintiff has retained counsel

competent and experienced in class-action litigation, and she intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the putative class members' interests. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

100.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by BANA's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

101.    BANA was acting as an escrow agent for Plaintiff and the putative class members.

102.    In the alternative, Plaintiff and the putative class members placed a special confidence in BANA to properly manage their escrow account.

103.    Therefore, BANA owed a fiduciary duty to Plaintiff and the putative class members to act in good faith and with due regard in managing Plaintiff's and the putative class members' escrow accounts that it held in trust.

104.     BANA's conduct, including making improper disbursements from the escrow accounts for property taxes that were not due, breached the fiduciary duty that it owed to Plaintiff and the putative class members.

105.     Plaintiff and the putative class members were damaged by BANA's breaches of its fiduciary duty. For example, they experienced shortages in their escrow accounts, which led to being billed for amounts that they did not owe and the assessment of late fees, corporate advance fees, and other default-related fees to their account.

106.     Because it knew that Plaintiff and the putative class members did not owe property taxes, BANA's conduct with respect to Plaintiff and the putative class members was either malicious or so reckless or negligent that it demonstrated a conscious disregard for their rights.

107.     As a result, Plaintiff and the putative class members are entitled to recover compensatory and actual damages from BANA.

## COUNT FOUR:
### Negligence
### (Class Claim)

108.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

109.     Under Rule 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class (the "Negligence Class"):

> All consumers: (1) whose primary residence is located in Virginia and subject to a mortgaged serviced by BANA; (2) who is exempt from paying property taxes under Va. Code § 58.1-3200, *et seq.*; (3) BANA made a payment from the escrow account to a third party for property taxes or assessed late fees or default-related charges because it incorrectly diverted monthly payments to taxes that were not owed in the two years predating the filing of this litigation.

110.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. BANA is one of

19

the nation's largest mortgage servicers. Upon information and belief, thousands of tax-exempt Virginia consumers were the subject of BANA's improper escrow procedures during the class period. These class members' names and addresses are identifiable through BANA's internal business records and by the records maintained by Virginia localities under Va. Code § 58.1-3604, and they may be notified of this litigation by published or mailed notice.

111. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether BANA assumed a duty of care with respect to Plaintiff and the putative class members; (2) whether BANA breached its assumed duty of care; and (3) the proper amount of damages.

112. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

113. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the class members that she seeks to represent. Plaintiff has retained counsel competent and experienced in class-action litigation, and she intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the putative class members' interests. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

114. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by BANA's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

115. Plaintiff and the putative class members were required to maintain an escrow account by their mortgage lenders.

116. BANA assumed the duty of servicing Plaintiff's and the putative class members' mortgage loans, including the administration of their escrow account.

117. Neither the Plaintiff nor any of the putative class members chose BANA to be their mortgage servicer. Instead, BANA sought out and assumed the servicing duties for these mortgages for its own financial benefit.

118. In assuming the servicing of Plaintiff's and the putative class members' loans, BANA was required to exercise reasonable care and prevent foreseeable harm in administering their escrow accounts and servicing their loans.

119.     BANA's duty of care also arose because of the special relationship between it, on the one hand, and Plaintiff and the putative class members, on the other hand. This special relationship arose because Plaintiff and the putative class members entrusted BANA with their mortgage payments and proper management of their escrow accounts. BANA alone was able to ensure that these payments were managed properly and the appropriate amounts were held in escrow accounts.

120.     BANA breached this duty by its conduct, including by assessing real estate taxes to the escrow accounts that were not due, taking monies intended to pay the principal and interest on a mortgage loan and diverting them to escrow accounts, making improper payments out of the escrow accounts, refusing to acknowledge that Plaintiff and the putative class members did not owe real estate taxes, and assessing improper late fees and default-related charges as a result of its escrow mismanagement.

121.     Plaintiff and the putative class members were damaged by BANA's breaches of its assumed duty of care. For example, they experienced shortages in their escrow accounts, which led to being billed for amounts that they did not owe and the assessment of late fees, corporate advance fees, and other default-related fees to their account.  They also suffered improper credit reporting and other non-economic damages.

122.     But for BANA's breach, Plaintiff and the putative class members would not have suffered these injuries.

123.     Because it knew that Plaintiff and the putative class members did not owe property taxes, BANA's conduct with respect to Plaintiff and the putative class members was either malicious or so reckless or negligent that it demonstrated a conscious disregard for their rights.

124.    As a direct and proximate cause of BANA's negligence, Plaintiff and the putative class members are entitled to recover their compensatory and punitive damages from BANA.

## COUNT FIVE:
### Violation of RESPA, 12 U.S.C. § 2605(e)(3)
### (Individual Claim)

125.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

126.    BANA violated 12 U.S.C. § 2605(e)(3) by continuing to provide derogatory information regarding the overdue payments within 60 days after BANA received Plaintiff's Qualified Written Request.

127.    Because of BANA's conduct, Plaintiff suffered concrete and particularized harm, including the reduction of her credit score and emotional distress.

128.    Upon information and belief, discovery will demonstrate that BANA's noncompliance with 12 U.S.C. § 2605(e)(3) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e), including because this conduct was a result of BANA's standard procedures that was used in responding to all Qualified Written Requests.

129.    Upon information and belief, BANA does not have a procedure in place to freeze negative payment information when it receives a Qualified Written Request challenging the validity of the payment information.

130.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from BANA for its violations of 12 U.S.C. § 2605(e)(3) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**COUNT SIX:**
**Violation of FCRA, 15 U.S.C. §1681s-2(b)(1)(A)**
**(Individual Claim)**

131.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

132.    On one or more occasion within the past two years, by example only and without limitation, BANA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

133.    When Plaintiff disputed her account with the credit bureaus, BANA used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers (such as BANA). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

134.    When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

135.    Upon information and belief, the ACDV form is the method by which BANA has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

136.    Upon information and belief, Experian, Equifax, and Trans Union each forwarded Plaintiff's disputes via ACDV forms to BANA.

137.    BANA understood the nature of Plaintiff's disputes when it received the ACDV forms.

138.    Upon information and belief, when BANA received the ACDV form containing Plaintiff's dispute, BANA followed a standard and systematically unlawful process where BANA

only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the consumer reporting agency.

139. Upon information and belief, when BANA receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

140. As a result of BANA's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including the inability to refinance her mortgage, a reduced credit score, stress, and other emotional distress.

141. BANA's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, BANA was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

142. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from BANA in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT SEVEN:
### Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
### (Individual Claim)

143. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

144. On one or more occasion within the past two years, BANA violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

145.    As Plaintiff detailed in the previous Count, BANA has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies, including for Experian, Equifax, and Trans Union.

146.    When it received the ACDV forms from the consumer reporting agencies, BANA did not review any of the documentation that Plaintiff attached to her dispute, which demonstrated that Plaintiff had not made any late payments on her mortgage.

147.    If BANA had reviewed these documents, which included proof of her tax-exempt status and proof of her timely mortgage payments, then it would have known that that its previous reporting was incorrect and needed to be updated.

148.    BANA also failed to consider the other information that the consumer reporting agencies provided regarding Plaintiff's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

149.    BANA is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

150.    BANA does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

151.    BANA understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

152.    As a result of BANA's violations of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: the inability to refinance her mortgage, a reduced credit score, stress, and other emotional distress.

153.    BANA's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

154.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from BANA in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT EIGHT:
### Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
### (Individual Claim)

155.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

156.    On one or more occasion within the past two years, BANA violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiff's credit files without also including a notation that his account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

157.    Specifically, BANA failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

158.    Upon information and belief, Plaintiff alleges that BANA rarely, if ever, added the XB or XC code or other notation that an account was disputed when it responded to ACDV forms.

159.    Furthermore, BANA knew that Plaintiff disputed the subject account through her dispute letters to the credit reporting agencies.

160.    Plaintiff's disputes were bona fide as Plaintiff's account was not past due because she timely made all payments for her mortgage.

161.    As a result of BANA's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized harm, including but not limited to: the inability to refinance her mortgage, a reduced credit score, stress, and other emotional distress.

162.    BANA's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, BANA was negligent, entitling Plaintiff to recovery against BANA under 15 U.S.C. § 1681o.

163.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from BANA in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff, on behalf of herself and the putative class members, moves for class certification and for statutory, actual, and punitive damages, as well as her attorneys' fees and costs against BANA for the class claims, as well as actual, statutory, and punitive damages and attorneys' fees and costs for her individual claims; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**CHRISTINE JIMENEZ**

By:____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
Pat McNichol, VSB #92699
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
*Counsel for Plaintiff*